548 A.2d 284

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Derrick SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1985.

Filed Sept. 30, 1988.

Jeffrey M. Voluck, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY and POPOVICH, JJ.

POPOVICH, Judge:

This case is on remand[1] to the Superior Court for consideration of the remaining issues raised on appeal, but not addressed by a panel of this Court because of its award of a new trial to the appellant (Derrick Simmons) which was subsequently vacated by the Pennsylvania Supreme Court.[2]

---

1. President Judge Cirillo is sitting by designation in place of the now deceased original panel member, Justice Roberts.

2. See *Commonwealth v. Simmons,* 518 Pa. 120, 541 A.2d 739 (1988).

It was the initial position of the panel Majority (written by the now deceased Justice Roberts, joined by Brosky, J., but over the dissenting opinion by Popovich, J), that the closing argument of the prosecution, telling the jury:

> ... if you acquit (these defendants [3]) go never to come back ..., never to have to answer again, (but) ... if you convict ... there are appeals and there may be reversals....[4]

3. The appellant and his codefendant (Nathaniel West) were tried jointly and each was awarded a new trial because of the remarks of the prosecutor subsequently held not to be improper by the Pennsylvania Supreme Court in *Commonwealth v. West & Simmons*, 518 Pa. 120, 541 A.2d 739 (1988).

4. An appreciation of what transpired below requires a reproduction of the entire closing argument of the assistant district attorney; to-wit:

> Lastly, I will ask for the courage of all of you to reach a verdict which is consistent with the evidence. I am not permitted to ask you to reach or tell you what I believe in terms of certain evidence, who I believe and why I believe them because what I say really is not important at all. I am also prohibited from doing that, properly so, by the Supreme Court of our Commonwealth because you, these 12 people here are the people that will determine the facts.
>
> Now, I mentioned power. What do I mean by that? Well, power is the fact that you as jurors in this case will actually make this system in this City work. You make it work. You know, some of us feel and many times you have heard that the greatest privilege or power that we have is to vote. Well, that is very true for many, many different reasons, but some of us at times think that in the Presidential election, there are so many millions of votes or in the Governor's election or Mayor and going down, of course, from millions of votes to hundreds of thousands that sometimes, maybe our vote doesn't count. Well, that is not true. Our vote counts very much. And because of our ability to vote, we can, in fact, see eventually things occurring through people or through legislation.
>
> Well, your power is something else. The power of being a juror and the power of actually taking part in the criminal justice system of which you are definitely a part at this point, is very significant, indeed, because what do I mean? I simply mean that the 12 of you, when you reach a decision, no matter what it is, it is to a certain extent final and it is to a certain extent immediate. You will not have to wait to see if that bill you wanted to be passed or whether the President will abide by what he said in his campaign. Your decision will be final to a certain extent and immediate.
>
> I say, final to a certain extent because if you acquit both these gentlemen, they go never to come back, never to see this charge and never to have to answer again. That is final. If you convict them of first degree murder or a lesser degree depending upon your own view and based on the evidence, of course, there are appeals and

improperly urged upon the jury a bias in favor of conviction. This was held by the Majority of the panel to have denied the appellant (as well as his codefendant Nathaniel West [5]) a fair trial. To remedy the matter, the judgment of sentence was vacated and a new trial was awarded (to the appellant and his codefendant).

After appeal, the Pennsylvania Supreme Court entered a terse per curiam order reading:

The Orders of the Superior Court are vacated and the matters are remanded to the Superior Court for consideration of the remaining issues raised on appeal. *See, e.g., Commonwealth v. Baker*, 511 Pa. 1, 511 A.2d 777 (1986).

*Commonwealth v. West & Simmons*, 518 Pa. 120, 541 A.2d 739 (1988).

Preceding our inquiry into the issues raised by the appellant, we deem it proper to set forth a factual accounting of the events leading to the case at bar.

Viewing the facts in a light most favorable to the verdict winner, the Commonwealth here, and giving it all reasonable inferences to be derived therefrom, reveal that on the night of November 9, 1979, Michelle Williams answered her door and admitted Allene Freeman to her house. As she did so, Michelle could see three or four men stabbing William Grant Johnson in his back as he crouched on the

there may be reversals later on because of evidentiary problems, but at least there is to an extent a finality to that also.

So that is why I say to all of you, the responsibility that Judge Richette very early in her comments to all of you means so much.

THE COURT: Excuse me, Mr. McGill. I really do think that you ought to add that the implications of a verdict should play no role in their reaching a verdict.

[Prosecutor]: Oh, yes, very definitely. Thank you, Judge.

THE COURT: I think that should be the final thing to what you just said.

[Prosecutor]: The implications, all of that is not to take any part in your verdict but understand that your verdict is indeed an immediate action. You are powerful, so please take that responsibility very seriously, as I am sure all of you have by the attention that you have been paying to all the people.

5. We have similarly had the companion case of *Commonwealth v. West* (J. 82001/85) remanded by the Pennsylvania Supreme Court to us. Our resolution is identical in both cases.

ground. Although it was late at night, the scene was illuminated by a street light and Michelle Williams recognized two of the attackers as the appellant and one Nathaniel West, both of whom she had known for several years. Ms. Williams called to her mother, who was inside the house, saying that the appellant and West had stabbed Johnson. The mother called the police and Johnson was taken into the Williams' home. Johnson was transported to the hospital by the police and pronounced dead within minutes of his arrival.

Ms. Williams, who was fourteen at the time, did not make a statement to the police because her mother had instructed her not to give them any information. However, the case was kept open by the police and several years later, as part of the continuing investigation, Ms. Williams did tell police what she had witnessed, and she later testified to these facts at the appellant's trial.

The complained-of closing argument by the prosecution was objected to at its completion, but, at the time of its making, the court cautioned the prosecutor, in the presence of the jury: "Excuse me, Mr. McGill (the prosecutor). I really do think that you ought to add that the implications of a verdict should play no role in their (jury) reaching a verdict." Further, to the objections of the appellant and his codefendant to the remarks made, the trial court felt its interruption cured whatever prejudice the remarks may have caused. As stated previously, the Supreme Court ultimately agreed that the appellant and his codefendant were not entitled to a new trial because of the alleged prejudicial closing remarks.

In compliance with the remand order of the Supreme Court, we observe that, save for the "closing argument" allegation raised in Point VIII of the appellant's brief and already found wanting by the high Court, there are twelve (12) issues raised for our consideration.

To commence with, the appellant argues that the convictions for murder of the first degree, possessing an instrument of crime, and criminal conspiracy were based on

insufficient evidence, were against the weight thereof and were contrary to law, and that he was entitled to a directed verdict. We disagree.

█ As to the conviction for murder of the first degree, the appellant does not contend that the Commonwealth failed to prove any element of the crime beyond a reasonable doubt, but, rather, bases his argument that Ms. Williams' testimony concerning her identification of the appellant and her account of the crime were "fraught with inconsistencies" and "not worthy of belief." We have made an independent review of the entire record and cannot state Ms. Williams' testimony is either so unreliable or contradictory as to make the verdict a result of conjecture or surmise rather than reason. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). Ms. Williams was clear in her identification of the appellant. She never altered her testimony that she saw a knife in the appellant's hand and saw him stab the victim.

We likewise disregard the appellant's contention that the verdicts for all three convictions were against the weight of the evidence. In reviewing the weight of the evidence, we must look to *all* the evidence, and when one considers the evidence in its entirety, it cannot be said the resultant verdicts were so against the weight of the evidence as to shock one's sense of justice. *Commonwealth v. Gonce*, 320 Pa.Super. 19, 466 A.2d 1039 (1983).

█ Appellant also contends the conviction for criminal conspiracy must be reversed because the Commonwealth failed to prove any agreement to commit a crime. The existence of a common agreement may, of course, be inferred from the evidence of the circumstances surrounding the conspiratorial activities. *Commonwealth v. Gordon*, 329 Pa.Super. 52, 477 A.2d 1342 (1984). While mere presence at the scene of the crime is insufficient to establish conspiracy, if the accused is not only present at the scene, but is also identified as one of the perpetrators of the crime, the finder of fact may conclude a criminal agreement existed. *Commonwealth v. Johnson*, 265 Pa.Super. 418, 402

A.2d 507 (1979). Certainly, the eyewitness' testimony placing the appellant, along with Nathaniel West and one or two other unidentified assailants, at the scene, as well as this same testimony establishing the appellant's participation by stabbing the victim with a knife, is sufficient to support an inference beyond a reasonable doubt that the appellant had entered into a common agreement.

Appellant raises for the first time before this court the specious argument that his conviction for possessing an instrument of crime is invalid because the Commonwealth failed to prove the knife was concealed. It is axiomatic that issues will not be considered for the first time on appeal and the argument is, therefore, waived. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

■ Appellant claims he has been denied a fair trial because the Commonwealth failed to inform defense counsel of the existence of a favorable witness. The witness in question was one Allene Freeman, who was interviewed by the prosecution prior to the trial. Ms. Freeman was also a friend of the appellant's family, and, in fact, was a defense witness at the time of the trial. Appellant contends the prosecution must be "penalized for its affirmative dereliction of duty to provide the defense with the name of the witness." (Brief for Appellant at p. 15) We disagree. We need not even consider whether this witness was within the control or possession of the prosecution because the appellant has not shown the requisite harm to his defense. *Commonwealth v. Bonacurso*, 500 Pa. 247, 455 A.2d 1175 (1983). The witness testified for the defense and it was on cross-examination that the witness revealed she had at one time been interviewed by the prosecution. Appellant contends the witness was not discovered until trial, and, therefore, her testimony may have been "stronger" if counsel had adequately prepared her. However, the appellant did not request a continuance so that he could have this preparation time. Pa.R.Crim.P. 305(E). We find no error in the trial judge's refusal to grant a mistrial.

■ The next issue raised by the appellant concerns the trial court's refusal to allow the jury to view the address on the medical examiner's report indicating the location of the crime. At trial, the appellant and the Commonwealth stipulated to a summary of the report. The cover of the report contained a form which included the place of injury. Appellant wanted this information available to the jury because this form listed the location as the 600 block of Dudley Street, which was not the address of the Williams' home. The Commonwealth objected, noting the preparer of the report had no independent knowledge of the location of crime but had relied on information supplied to the medical examiner. We find the trial court properly excluded the evidence as hearsay.

■ Appellant also alleges the trial court erred in not declaring a mistrial due to prosecutorial misconduct. We have examined the prosecutor's remarks made during the cross-examination of a defense witness and find the trial judge immediately issued cautionary instructions to the jury. We cannot find the unavoidable effect of the remarks prejudiced the jurors so as to form in their minds a bias and hostility causing them to be unable to weigh the evidence objectively and render a true verdict. *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669 (1974).

Appellant next raises two issues concerning the scope of redirect examination of one witness and the admission of rebuttal evidence. Both areas are subject to the discretion of the trial judge, and we can find no abuse of that discretion.

■ We also find no error in the trial court's failure to include two of the appellant's requested points in charging the jury. The court did charge the jury on voluntary manslaughter and, of course, the trial judge is not required to use words provided by appellant. *Commonwealth v. Brown,* 273 Pa.Super. 468, 417 A.2d 743 (1979). The judge was also correct in not issuing a missing witness charge since there were no missing witnesses. *Commonwealth v. Manigault,* 501 Pa. 506, 462 A.2d 239 (1983).

■ Similarly, we find no error in the trial court's dismissal of a prospective juror. Appellant's argument that his right to an impartial jury was violated because an identifiable segment of the community was stricken from the jury is without merit. The trial judge dismissed a prospective juror who stated she could not be fair and impartial because she philosophically opposed the death penalty. The death qualification procedure has been approved by our Supreme Court. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985).

■ The last issue raised by the appellant concerns the recording of the verdict. Appellant states this was error because one juror showed the verdict was contrary to her belief by her "demeanor." The record indicates this juror did state her agreement with the guilty verdict when she was individually polled. Moreover, the appellant did not object at the time of the entry nor in any way call the juror's "demeanor" to the attention of the trial judge. We, therefore, refuse to grant the appellant a new trial on this basis.

■ Finally, we note the appellant has been convicted and sentenced for two inchoate crimes—conspiracy and possessing an instrument of crime. Under *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982), this constitutes an error of law and judgment of one of the crimes must be arrested. *See also* 18 Pa.C.S.A. § 903 and *Commonwealth v. Tingle*, 275 Pa.Super. 489, 419 A.2d 6 (1980).

■ Although this issue is not raised by the appellant, the illegality of sentence is not waivable and may be considered *sua sponte*. *Commonwealth v. Thomas*, 291 Pa. Super. 263, 435 A.2d 901 (1981). We, therefore, will amend the sentence by vacating the judgment of sentence of two-four years imprisonment which was imposed for possessing an instrument of crime. *Commonwealth v. Eberts*, 282 Pa.Super. 354, 422 A.2d 1154 (1980) and 42 Pa.C.S.A. § 706.

Judgment of sentence for possession of an instrument of crime vacated. Judgments of sentence for murder of the first degree and conspiracy affirmed.

BROSKY, J. files a Concurring Statement.

BROSKY, Judge, concurring:

I am in agreement with the majority's disposition of this case. I write separately, however, with regard to the Supreme Court's remand of this case. As pointed out by the majority, the case was remanded following a finding by the Pennsylvania Supreme Court that remarks made during the prosecutor's closing argument did not deprive appellant and his co-defendant of a fair trial.

I only wish to note that, while I am bound by the decision of this Commonwealth's highest court, I remain of the opinion that comments such as those made by the prosecutor during his closing argument are to be neither condoned nor encouraged, even though they may fail to rise to such a level as to require a new trial.